IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOHN ADAMS and ANNETTE ADAMS,            Case No. 3:22-cv-543-JR

                                                FINDINGS &

                                                RECOMMENDATION

        Plaintiffs,
v.

WASHINGTON COUNTY, and SHANNON
WILDE, in her individual capacity,

        Defendants.
_____

RUSSO, Magistrate Judge:

       Plaintiffs John and Annette Adams bring this action asserting violation of their Fourth and Fourteenth Amendment rights following a search of their property and arrest of John Adams during a Washington County investigation into the downloading of child sexual abuse material. Plaintiffs assert four claims for relief: (1) unlawful seizure of their residence against all defendants; (2) unlawful seizure and detention of plaintiff John Adams against all defendants; (3) unlawful search of plaintiff Annette Adams' vehicle; and (4) unlawful seizure related to an alleged failure to

Page 1 – FINDINGS & RECOMMENDATION

provide medical care to plaintiff John Adams. Plaintiff moves for summary judgment as to his second claim for relief and defendants move for summary judgment as to all claims. For the reasons stated below, plaintiff's motion is denied, and defendants' motion is granted as to plaintiff's second claim for relief and denied as moot otherwise.

## BACKGROUND

Defendant Shannon Wilde is a detective in the Washington County Sheriff's Office assigned to the Violent Crimes Unit. Declaration of Shannon Wilde (ECF 49) at ¶ 1. Part of Wilde's caseload involves investigating and prosecuting child abuse cases, including those involving child sex abuse materials (CSAM). Id. at ¶ 4.

On November 18, 2021, Wilde investigated a CyberTip through the Internet Crimes Against Children (ICAC) database originating in the National Center for Missing and Exploited Children (NCMEC). Id. at ¶¶ 6-7. NCMEC is a private non-profit entity that uses data from electronic service providers who are required to report suspected CSAM on their systems. Id. at ¶ 7.

> The CyberTip contained information provided from Kik, which is primarily a messaging app available for smart phones. The CyberTip concerned a specific Kik user ("Kik User") with the screen name 307468, ESP User ID 307468_jzn, and the IP address 174.204.198.94. The Kik User's file provided in the CyberTip indicated that the user registered under "Sam Adams" with an associated email of brownjrhigh@hotmail.com. A known device, a Samsung SM-N95OU, is connected to that account. A Google search of that model number indicated the device was likely a Samsung Galaxy Note 8 android cell phone.

Id. at ¶ 8.

The tip reported the Kik user uploaded five files between the dates of April 13, 2021, and April 30, 2021, three of which were uploaded from IP address 24.20.27.151 and the other two were uploaded from IP addresses 174.204.214.244 and 174.204.192.94. Id. at ¶ 9. Detective Wilde determined the IP address ending in 151 is associated with Comcast

cable accounts, and the IP addresses ending in 244 and 94 are associated with Verizon Wireless accounts. Id. at ¶ 10. Oregon State Police Detective Alex Monarch served subpoenas to Comcast and Verizon to obtain the identity of these accounts. The Comcast IP address is registered to plaintiff John Adams, who resides at 1515 SW 212th Ct. in Beaverton. The subpoena to Verizon returned no subscriber information but did produce two Excel spreadsheets with over a dozen phone numbers connected to the 244 and 94 IP addresses. Id.

The five Kik files were video files depicting minor girls engaged in a sex act, a sex act between a prepubescent girl and an adult male, an adult female performing a sex act on an apparently prepubescent boy and another child, as well as another adult female performing a sex act on an apparently prepubescent boy. Id. at ¶ 11.

Because evidence suggested CSAM had been downloaded to an IP address associated with plaintiff John Adams, defendant Wilde, along with Detective Mark Povolny, contacted John and Annette Adams at their home on November 23, 2021, to gather further information. Id. at ¶¶ 13-14. Defendant Wilde states:

> While we had probable cause to arrest an unknown person, based on evidence that CSAM was associated with the Adams' IP address, and that a Samsung Galaxy 8[1] was used to view or download the CSAM, we had no facts about whether or not that device would still be at that residence and whether or not it was connected to anyone who still lived there.
> …
> I told [plaintiff Annette] Adams that we were there to follow up suspicious activity that had occurred connected to their home internet, and that we had questions such as who lived in the home, who had what device, and who may have access to the family internet account. Mrs. Adams initially asked if she should defer to Mr.

---

[1] Plaintiffs take issue with references to a "Samsung Galaxy 8" phone and note that in the report dated November 11, 2021, defendant Wilde stated the Samsung device SM-95OU "is likely a Samsung Galaxy Note 8." (ECF 43-1 at p. 2.). Defendant Wilde did testify that she had no information to the contrary that the subject phone was any other than a Galaxy Note 8. (ECF 43-3 at p. 3, deposition p. 20.). The distinction is of little consequence as the report states it is likely the Note 8 and the record does not reveal the conversations regarding the phone during the investigation were fixated on the phone's precise name.

Page 3 – FINDINGS & RECOMMENDATION

Adams. I responded that we had evidence that someone was downloading CSAM on her home internet, and that I wanted to talk to her first to narrow down who it might be. After hearing this, Mrs. Adams began to answer my questions.

…

Mrs. Adams told me that she lived in her home with Mr. Adams and their 15-year-old son Aaron. She told me that the family's Wi-Fi network is secured, so it cannot be accessed without a password.

…

Mrs. Adams said that she had a Samsung Galaxy phone and believed it was a model 10. She also told me that she believed that her son had an iPhone. I asked Mrs. Adams what kind of phone Mr. Adams had, and she replied that it was a Samsung Galaxy 8. I realized at that time that that was the same model of phone that the CyberTip had said was associated with the Kik account in this case.[2] Mrs. Adams denied using Kik Messenger or viewing any CSAM images. Mrs. Adams further told me that the family did not have any guests staying in their home in April 2021, thus narrowing my possible suspects to the three individuals that resided in the Adams home.

…

Mrs. Adams told me that Mr. Adams worked at night and was asleep or about to go to bed. After I asked to see Mr. Adams, she agreed and returned with Mr. Adams. Mr. Adams appeared to have just been awakened. He was wearing a FedEx uniform with no shoes on. His demeanor indicated that he was displeased with our presence.

…

Mr. Adams immediately began asking what this was about. I explained to him that we were there based on information that was downloaded to his home Wifi. Mr. Adams responded that they had "hotspots" and insinuated that anyone could have been connected to his home Wifi.[3] At that point, Detective Povolny pulled up the Adams Wifi network on his phone and told me and Mr. Adams that it was a closed network, meaning that it could not be accessed without a password.

…

---

[2] Plaintiffs dispute that plaintiff Annette Adams told Wilde her husband had a Samsung Galaxy 8. In her deposition Annette Adams stated she did identify that "John had a phone but did not recall telling the officer what kind of phone he had and if [she] did say it, [she] didn't say an 8, because [she doesn't] know what phone he has … I don't recall telling her that he had a Samsung Galaxy." (ECF 55-1 at exhibit 1, p.4 (deposition page 22)). However, Annette Adams admitted she could have told Wilde it was a Samsung Galaxy 8, she just doesn't remember. Id. Regardless, the record establishes that Wilde believed a Samsung phone was identified during conversation with Annette and/or John.

[3] Plaintiff takes issue with the characterization plaintiff John Adams suggested the network was not password protected and assert the officers suggest that if it were password protected it would be impossible for anyone else to use the network. While plaintiffs suggest the officers are not computer science experts, the issue is whether they reasonably believed plaintiff meant to imply the network was open to anyone in the vicinity.

Page 4 – FINDINGS & RECOMMENDATION

> I asked Mr. Adams what kind of phone he had, and we went back and forth: "What kind of phone are you looking for" to which I responded "what kind of phone do you have?" Eventually I told him that we were looking for a Samsung Galaxy 8 phone, to which he replied: "That's my son's phone." After that, Mr. Adams said that he was done speaking with us and that "this conversation is over. You can come back with a warrant."

Id. at ¶¶ 14-21.

The detectives then left the Adams' property and returned to their vehicles but were still able to see the front of the home. Id. at ¶ 22. Defendant Wilde determined that if plaintiff John Adams had the Galaxy phone, she believed he would destroy it shortly. Id. at ¶ 22. However, she did not believe they had probable cause to arrest Mr. Adams, just strong probable cause to believe that CSAM had been downloaded onto at least one device connected to the Adams' Wi-Fi password-protected network. She also felt there was not sufficient articulable facts to tie any particular individual to the illegal activity. Id. at ¶ 23.

About fifteen minutes later, defendant Wilde noticed the Adams's garage door open, and she and Detective Povolny saw plaintiff John Adams carrying a computer tower and load it into a Ford Explorer, along with other unidentified items, parked in the driveway. Wilde was concerned that Adams was loading devices that contain CSAM into his vehicle intending to move or destroy the devices. Id. at ¶ 23 Declaration of Mark Povolny (ECF 48) at ¶ 10. Wilde asserts she came to this conclusion based on:

> • Mrs. Adams had told us that before we arrived, Mr. Adams was asleep or preparing to go to sleep, since he worked night shifts. Shortly after we discussed with Mr. Adams the facts showing that CSAM had been downloaded to devices connected with his home internet, including a Galaxy phone which Mrs. Adams had said belonged to Mr. Adams, he asked us to leave his property and the began loading electronic devices into his car. At the point when we left the Adams' premises at Mr. Adam's request, I assumed he would go back to sleep, since we had apparently spoken to him during or before his usual bedtime. When Detective Povolny and I met in the cul-de-sac after leaving the Adams' property, we agreed that while Mr. Adams' behavior was suspicious, we didn't have sufficient facts

giving probable cause to arrest him as the person who was connected to the device used for the illegal download. During our discussion in the cul-de-sac, Detective Povolny and I speculated about the kind of facts that would give us probable cause, including 'if he were to load all his computers in a car right away.' Shortly thereafter, when we realized that Mr. Adams was loading his car with computers, I could think of no other logical legal reason why he would have that reaction other than to destroy or conceal evidence.

• Mr. Adams made several statements before he asked us to leave his house, which were untrue and relevant to whether he might be trying to destroy evidence. During my discussion with him by the garage, he claimed that anyone could have accessed his home Wi-Fi network, perhaps using a "hotspot." Prior to that statement, Mrs. Adams told me that the Adams home Wi-Fi was password-protected. Also, when I asked Mr. Adams about a Samsung Galaxy phone, he told me that phone was his son's phone. However, Mrs. Adams had already identified her son's phone as an iPhone, not a Samsung Galaxy. Both of these statements were among the facts that led me to believe that the only reason he had to be loading computer equipment into his car was to hide or destroy it.

• In addition, Mrs. Adams had stated that Mr. Adams had a Galaxy Note 8, the type of device we were looking for, when we first arrived at the door. When I asked Mr. Adams if he had a Galaxy Note 8, rather than denying it, he claimed the Galaxy Note 8 belonged to his son Aaron.

Declaration of Shannon Wilde (ECF 49) at ¶ 25.

At that point, the detectives arrested plaintiff John Adams believing he was imminently likely to remove or destroy evidence of the CSAM which constituted an exigent circumstance. Id. at ¶ 26; Declaration of Mark Povolny (ECF 48) at ¶ 12. The Detectives also decided to apply for a warrant to search and seize the digital devices.

Detective Povolny asked for a nearby marked patrol car to assist and while waiting, he observed plaintiff John Adams go into the garage, climb a ladder into a storage space, emerge with a brown paper bag and lock it in the vehicle with the other items. Declaration of Mark Povolny

Page 6 – FINDINGS & RECOMMENDATION

(ECF 48) at ¶ 13. Povolny states Adams repeat this pattern several times of retrieving items and unlocking and relocking the vehicle every time he placed something in it. Id.[4]

When the patrol units arrived, they detained Adams and Detective Povolny retrieved a Samsung Galaxy phone from Adams' pocket as potential evidence. Id. at ¶ 14.

A vehicle search was later conducted based on plaintiff Annette Adams' consent, and the home and digital devices were searched after defendant Wilde obtained a warrant for the house and Explorer vehicle. Id. at ¶ 17-20; Declaration of Shannon Wilde (ECF 49) at ¶ 29-30.

Defendant Wilde provided the arresting sheriff's deputies, including Deputy Brian Appel, with her basis for the arrest including the CyberTip report. Id. at ¶ 28. Deputy Appel transported plaintiff John Adams to the Washington County jail where he was booked and charged with encouraging Child Sexual Abuse. Declaration of Brian Appel (ECF 45) at ¶ 8.

DISCUSSION

During the briefing of the motions, the parties stipulated to dismissal with prejudice of all claims against Washington County and claims 1, 3, and 4 against defendant Wilde. ECF 53, 58. Accordingly, only the unlawful seizure claim of plaintiff John Adams against defendant Wilde remains. Therefore, defendants' motion for summary judgment as to the dismissed claims is denied as moot.[5] Both parties seek summary judgment as to the second claim.

Absent exigent circumstances, police who have probable cause to arrest a felony suspect must obtain a warrant before entering a dwelling to carry out the arrest. United States v. Prescott, 581 F.2d 1343, 1350 (9th Cir. 1978). Plaintiffs asserts the undisputed facts demonstrate defendant

---

[4] Plaintiffs dispute that John Adams unlocked and relocked the vehicle door noting that it in fact locks automatically when shut. See Deposition of John Adams at p. 44 (ECF 55-2 at p. 4) (the vehicle was a former police vehicle, and it has a safety feature that when the back door shuts, it locks). Plaintiffs present no evidence that the officers were aware of this.

[5] As noted, the dismissals are with prejudice. To the extent plaintiffs' response to defendants' summary judgment motion suggests claim 3 should proceed against detective Povolny in an amended complaint, plaintiffs' later filed dismissal of the claim with prejudice removes the claim from this case.

Page 7 – FINDINGS & RECOMMENDATION

Wilde lacked probable cause to arrest John Adams. Defendants assert the undisputed facts establish both probable cause and exigent circumstances.

"Probable cause exists when, at the time of arrest, the agents know reasonably trustworthy information sufficient to warrant a prudent person in believing that the accused had committed or was committing an offense." United States v. Delgadillo–Velasquez, 856 F.2d 1292, 1296 (9th Cir.1988).

Exigencies often arise in a home arrest situation because the arresting officers reasonably believe the suspects either know or will learn at any moment that they are in immediate danger of apprehension. United States v. George, 883 F.2d 1407, 1412 (9th Cir. 1989). The government bears a heavy burden of demonstrating that exceptional circumstances justified departure from the warrant requirement. United States v. Spetz, 721 F.2d 1457, 1465–66 (9th Cir.1983). The burden cannot be satisfied by speculation about what may or might have happened. United States v. Hoffman, 607 F.2d 280, 284 (9th Cir.1979). There must exist "specific and articulable facts which, taken together with rational inferences ...," support the warrantless intrusion. United States v. Dugger, 603 F.2d 97, 99 (9th Cir.1979) (quoting Terry v. Ohio, 392 U.S. 1, 21 (1968)). The exigencies must be viewed from the totality of circumstances known to the officers at the time of the warrantless intrusion. People of Territory of Guam v. Borja, 732 F.2d 733, 736 (9th Cir.1984). The exigent circumstances exception applies when a reasonable police officer would have probable cause to believe that evidence is in the process of being destroyed. U.S. v. Franklin, 694 F.3d 1, 7-8 (11th Cir. 2012).

As noted above, Wilde did not believe, immediately after the conversation with the Adams, they had probable cause to arrest Mr. Adams, just strong probable cause to believe that CSAM had been downloaded onto at least one device connected to the Adams' Wi-Fi password-protected

network. She also felt there was not sufficient articulable facts to tie any particular individual to the illegal activity.[6] Nonetheless, all the information she learned during that conversation including: someone in the house (either John Adams or his son) possessed a Galaxy phone; the network tied to the home provided the means for downloading CSAM to a Galaxy phone; John Adams' activity (despite normally sleeping at this time of day) in loading materials into his vehicle (including a computer); and an apparent mischaracterization that someone else accessed the Adams' network provided probable cause to believe a CSAM containing device was in imminent danger of removal or destruction permitting a warrantless arrest based on exigent circumstances.

Defendant Wilde had experience investigating CSAM trafficking and the use of digital devices including smart phones and computers in that trafficking. Although the investigation at the point she contacted the Adams did not reveal downloading CSAM on a computer, it did reveal the following circumstances: downloading CSAM material to a Samsung phone via the Adams' home internet, a Samsung phone was located at the Adams' home, John Adams immediately began loading a computer, capable of holding CSAM, along with other items into a locked car, and he or his son possessed a Samsung phone. The totality of the circumstances demonstrated specific articulable facts to reasonably permit a conclusion that John Adams was either involved in downloading CSAM or involved in its possession for purposes of its destruction. No reasonable trier of fact could conclude that defendant Wilde did not reasonably believe she had probable cause to arrest John Adams given the then existing exigent circumstances combined with probable cause

---

[6] Plaintiffs assert Wilde felt she did not have probable cause to search—but what she stated during her deposition was that she did not intend to write a search warrant because she believed that if Adams was in possession of the subject device, that it would probably be destroyed shortly and that the District Attorney would need that evidence. Deposition of Shannon Wilde (ECF 43-3) at pp. 27-28. It was the activity of removing items from the house to his vehicle, including items used to access the internet that led her to believe not only did she have probable cause to make an arrest, but she now had articulable facts upon which to rationally infer that evidence of the crime was in danger of removal or destruction. Prior to this observation, defendants could only speculate as to the exigent circumstances that would make getting a warrant fruitless.

Page 9 – FINDINGS & RECOMMENDATION

to believe a crime involving CSAM was about to be removed. Accordingly, defendants are entitled to summary judgment.

## CONCLUSION

Plaintiff's motion for summary judgment (ECF 42) should be denied and defendants' motion for summary judgment (ECF 44) should be granted as to plaintiffs' second claim for relief and otherwise denied as moot. The parties' request for oral argument is denied. Given that claim two is the only remaining claim and defendants should be granted summary judgment as to that claim, a judgment should enter for defendants, and the case dismissed.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this 11th day of September, 2024.

_____/s/ Jolie A. Russo_____
Jolie A. Russo
United States Magistrate Judge